HENRY W. RICE v. B. R. KUCKENBECKER AND ANOTHER.[1]

January 28, 1927.

No. 25,745.

**Chancery decree established that title is held by United States in trust for Indian full-blood.**

A chancery decree to which the present plaintiff was party divested him of the title to the land in controversy, and adjudged that the United States, complainant in the suit, held it in trust for the Indian through whom the present plaintiff claimed. Since the decree, a prior grantor in plaintiff's chain of title executed another deed to plaintiff and the Indian executed a deed to defendants. It is *held*:

The decree was valid and binding and divested plaintiff of his title, and that, as to the parties to the decree and those claiming title through either party thereto, it must be held conclusively established that the title is held by the United States in trust for an Indian full-blood, and that he is incapable of in any manner alienating the land until after the restrictions in the trust patent have expired.

Indians, 31 C. J. p. 493 n. 41; p. 494 n. 43, 44 New; p. 516 n. 96, 97, 1; p. 519 n. 61; p. 520 n. 70.

Defendants appealed from an order of the district court for Becker county, Parsons, J., denying their motion for a new trial. Reversed.

*H. N. Jenson*, for appellants.

*R. J. Powell*, for respondent.

[1]Reported in 212 N. W. 23.

HOLT, J.

Action to determine adverse claims to vacant land to which both parties asserted title in fee simple. Findings for plaintiff, and defendants appeal from the order denying a new trial.

The land consists of two fractional government lots, containing about 67 acres, of the White Earth Indian Reservation, allotted to an Indian to whom a trust patent was issued in 1902 under the act of Congress of February 8, 1887. The Indian was a mixed-blood, and under the so-called Clapp amendment of June 21, 1906, restrictions in the trust patent were removed, making him absolute owner with power to convey a perfect title in fee simple. He did convey the lots to one John Ernster in December, 1906; the next year Ernster conveyed to one M. F. Magnuson who in 1909 conveyed to one G. A. Erickson, and the latter in May, 1910, conveyed to plaintiff herein.

All said conveyances were deeds of warranty, which deeds together with the trust patent were duly recorded in the office of the register of deeds of the proper county prior to December, 1910, in which month an action was begun in chancery in the Circuit Court of the United States for the District of Minnesota, Sixth Division, wherein the United States was plaintiff and M. F. Magnuson defendant. Notice of lis pendens was duly filed in the proper register of deeds' office. Later, by application to the court, the plaintiff herein was made defendant, the bill of complaint amended accordingly and service of subpoena personally made on him. He however defaulted. The bill of complaint as amended set out the issuance of the trust patent, averred that thereunder the grantee therein, the Indian allottee, was without power to convey or alienate the land or any interest therein, alleged that nevertheless he had executed the deed to Ernster, and set forth all the subsequent conveyances and their record down to and including the one to the defendant Henry W. Rice, the plaintiff herein, and asked that each of the said conveyances be declared null and void and removed as a cloud upon the title of the complainant, the United States.

A decree pro confesso was entered on April 6, 1920, declaring null and void each of the several deeds mentioned and decreeing

"that neither the said defendant Henry W. Rice, or any other person or parties claiming by, through or under him, have any right or interest in or to the said described parcel of land, or any part thereof, and that they are, and each of them is forever barred or restrained from claiming or asserting any such rights or interests by reason of the conveyances hereinbefore enumerated." As to Magnuson, the original defendant, a decree of dismissal was entered on the same day. Subsequently the Indian conveyed to these defendants, and plaintiff obtained a quitclaim from G. A. Erickson, his former grantor. A decree establishing the blood status of this Indian as one of mixed-blood was entered under the act of Congress of June 30, 1913, but that decree can have no bearing on the validity of the chancery decree, for by the terms of the act pending suits were not affected thereby.

Mielke v. Schermerhorn, 163 Minn. 21, 203 N. W. 440, determined that the federal court had jurisdiction of the subject matter of suits of this character, and that effect must be given to its decrees.

The learned trial court was of the opinion that the principle applied in Hurr v. Davis, 155 Minn. 456, 193 N. W. 943, 194 N. W. 379, if followed, must result in a decision in favor of plaintiff. The only difference is that here plaintiff was a party to the decree which divested him of title, whereas in the Hurr case the defendants, who prevailed, were not parties thereto. It may be doubted whether that is enough to lead to a different result. But, be that as it may, the court as now constituted is of the opinion that proper effect was not given in the Hurr case to the chancery decree. It must be conceded that the decree now in question was based upon a mistaken fact, namely, that the allottee, holder of the trust patent, was a full-blood Indian. He was in truth a mixed-blood and capable of conveying good title in fee simple. By mesne conveyances from him the plaintiff herein held such title when divested thereof by the decree. Plaintiff cannot now be heard to say that it did not, for he was a party and is bound by it. He has not obtained any title since the decree except the deed from his former grantor Erickson, but it is clear that all that Erickson could grant passed by the deed he gave plaintiff long prior to the decree, hence nothing further could be

had in the way of title from Erickson who has obtained no title since he first deeded to this plaintiff. We think this is so clearly demonstrated by Mr. Justice Dibell in his dissent in the Hurr case that nothing further need be said.

It occurred to us that the doctrine of after-acquired title might have a bearing on the case, and briefs were requested and furnished on that point. We conclude it does not apply. The Indian was either capable or incapable of conveying the land when Ernster received the deed from him. If the former, Henry W. Rice had a perfect title when the decree was rendered; if the latter, his deed was an absolute nullity, the covenants of which could not draw to it a subsequently acquired title of the grantor. Nor did the grantor acquire a subsequent title. And the rule seems also to be that in cases of this sort after-acquired title cannot be invoked. Starr v. Long Jim, 227 U. S. 613, 33 Sup. Ct. 358, 57 L. ed. 670.

But plaintiff seeks to avoid the effect of the chancery decree because the Indian was not a party. U. S. v. Waller, 243 U. S. 452, 37 Sup. Ct. 430, 61 L. ed. 843, is cited. There the bill of complaint alleged the Indian grantor to be a mixed-blood holding title in fee simple under the Clapp amendment, and the government sought to set aside the conveyance because of fraud practiced on the Indian. A demurrer to the bill was sustained because it was held to disclose on its face that the United States' guardianship had ceased, and hence the federal court was without jurisdiction. The decree here involved is not based on such a theory. Respondent concedes that, if the bill of complaint upon which the decree was rendered be construed as a suit by the United States in its sovereign capacity filed for the purpose of canceling and clearing from the records the deed of the Indian on the ground that it was made in direct violation of a restraint of alienation, it directly challenged the legal status of the Indian himself. On that theory, the Indian, the ward of the complainant, was a party. We think this is the correct theory, and the one which the decree compels us to accept. In addition to the cases cited in Mielke v. Schermerhorn, supra, this language from Heckman v. U. S. 224 U. S. 413, 32 Sup. Ct. 424, 56 L. ed. 820, is appropriate and gives effect to the decree:

"When the United States instituted this suit, it undertook to represent, and did represent, the Indian grantors whose conveyances it sought to cancel. * * * But if the United States, representing the owners of restricted lands, is entitled to bring a suit of this character, it must follow that the decree will bind not only the United States, but the Indians whom it represents in the litigation. This consequence is involved in the representation. Kerrison v. Stewart, 93 U. S. 155, 160; Shaw v. Railroad Co. 100 U. S. 605, 611; Beals v. Illinois, M. & T. R. Co. 133 U. S. 290, 295. And it could not, consistently with any principle, be tolerated that, after the United States on behalf of its wards had invoked the jurisdiction of its courts to cancel conveyances in violation of the restrictions prescribed by Congress, these wards should themselves be permitted to relitigate the question."

Plaintiff had the opportunity to litigate the question whether the Indian had made the conveyance under which he claimed title in violation of restrictions prescribed by Congress; he failed to do so though personally served in the suit, and it must now be held that he is bound thereby and the adjudication that such deed was violative of the restrictions must now be given effect.

It also follows that the Indian by his guardian, the United States, being a party to the suit, must also be bound by it. And the consequence would seem to be inescapable that by the decree it was established that he holds a trust patent to the land as a full-blood, and therefore any attempted alienation subsequent to the decree, and before the restrictions in the patent are removed, is null and void. It results that defendants obtained nothing by the deed the Indian gave them since the decree. That decree must be given effect not only as between the parties thereto, but also as to those who thereafter claim title through one of the parties to that decree. Neither party to this action has any claim or title to the land.

The order must therefore be reversed and the case is remanded for findings accordingly, ordering judgment of dismissal.

QUINN, J. (concurring).
I concur in the result reached.